J-S08014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.W. | |
| Appellant | No. 1347 WDA 2016 |

Appeal from the Order Entered August 11, 2016
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2013-1130

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED MARCH 27, 2017**

Appellant, K.W. ("Mother") is the mother of the two children ("Children") at issue in this custody proceeding, I.C.[1] (born November 2010) and J.C.[2] (born April 2012).  She appeals from the final order resolving Mother's motion to modify custody in favor of Appellee, J.C. ("Father"). Mother contends that the court disregarded record evidence in her favor and that the children's best interests are not served by Father having primary custody.  We affirm.

We state the facts and procedural history as set forth in the trial court's opinion.

---

[1] The record sometimes refers to I.C. as B.C., a nickname.

[2] Both this child and Father share the initials "J.C."  This memorandum uses "J.C." to refer only to the child.

Before the court is a custody dispute involving two (2) children, [I].C., age 5, and J.C., age 4. The parties dispute primary physical custody of their daughter and son. Such dispute has been ongoing since February of 2013 and has been the subject of several prior interim and final orders of custody.

On February 28, 2013[, Father] filed a complaint for shared physical and legal custody. On March 27, 2013[, Father] filed a counter-affidavit objecting to a proposed relocation by [Mother]. On April 19, 2013[, Mother] filed an "Emergency Motion to Relocate." In this emergency motion, she represented that she had lost employment at the Meadows Casino and that she had encountered a "housing crisis." [Mother] requested that she be permitted to move with her children from Canonsburg, Washington County to Irwin, Westmoreland County.

On April 19, 2013 the Hon. Gary Gilman granted [Mother] emergency relief permitting her move to Irwin and issued an interim order of custody. Pursuant to the interim order, [Father] had physical custody of the children starting each Thursday evening until Sunday. [Mother] had physical custody of the children at all other times.

On April 26, 2013, [Mother] filed a formal petition seeking relocation of the children to Fort Worth, Texas. On June 6, 2013 [Mother] sought a change to Judge Gilman's interim order. [Mother] requested that the children be in her custody any night that [Father] was not available to have the children reside in his home. Judge Gilman denied this requested relief. However, Judge Gilman directed that the paternal grandparents should not smoke in the presence of the children. On July 26, 2013, [Mother] withdrew her petition to relocate to Texas.

On August 23, 2013 upon the recommendation of a custody conference officer, Judge Gilman issued an order of custody. Pursuant to this order, the parties shared physical and legal custody of the children on a recurring two (2) week schedule. In "Week A" [Father] had physical custody of the children from Thursday until Sunday. In "Week B" [Father] had physical custody from Thursday

until Monday. The children resided with [Mother] at all other times.

On October 1, 2013 [Mother] requested a custody trial de novo "nunc pro tunc." Judge Gilman denied the request as being untimely.

On or about April 16, 2014[, Mother] served notice of her intention to relocate with the children to Baltimore, Maryland. On May 6, 2014[, Father] filed a counter affidavit opposing [Mother]'s intention to relocate from Irwin, Pennsylvania to Maryland. This court conducted a relocation hearing on July 10, 2014. On July 18, 2014, this court issued an opinion and order approving [Mother's] relocation to Baltimore, Maryland. In the same order, this court issued an interim order of custody providing the parties with shared physical and legal custody, with the parties having a two (2) week on and two (2) week off schedule. This court scheduled a further hearing to consider all evidence relevant to a modified order of custody as required by 23 Pa.C.S.A. § 5337(f).

On August 5, 2014 [Father] filed a written request for reconsideration. On September 11, 2014 this court denied [Father]'s request for reconsideration and issued a modified order of custody. The modified order of custody was stipulated to and agreed upon by the parties. The modified order of custody incorporated this court's July 18, 2014 order for shared custody on a two week on two week off schedule and portions of Judge Gilman's order of August 28, 2013.

Within eight months, on March 17, 2015[, Mother] filed a motion seeking to modify the previously agreed upon custody order. On February 18, 2016 upon recommendation of the custody conference officer this court issued a new order of custody. This new order provided for the parties to share legal custody. However, primary physical custody during the school year was awarded to [Father] and periods of partial custody on the first, third and fourth weekend of each month was granted to [Mother]. During the summer break from school the parties returned to sharing physical custody on a two (2)

- 3 -

week on and two (2) week off schedule. On March 3, 2016, [Mother] filed a timely request for a trial de novo.

Following a pre-trial conference on April 8, 2016[,] this court scheduled the trial de novo for June 27 and June 28, 2016. The parties appeared and offered testimony of seven witnesses including both parties. Due to the length of testimony [Father]'s testimony could not be completed. The parties returned on July 15, 2016[,] to complete the presentation of evidence which included testimony from [Father], and rebuttal evidence from [Mother].

Trial Ct. Op., 8/12/16, at 1-4.[3]

On August 11, 2016, the court issued an eight page final opinion and order establishing the parties' custody of the Children. The court awarded primary physical custody to Father during the school year, with periods of partial custody granted to Mother during the first and third full weekends of each month. Trial Ct. Op., 10/7/16, at 24-25.[4] During the summer months, Mother was provided with seven weeks of custody. *Id.* at 25. Mother timely appealed and filed a Pa.R.A.P. 1925(a)(2) statement. The court issued a responsive opinion that also incorporated by reference its August 12, 2016 opinion. *Id.*

Mother raises the following issues:

1. Did the lower court err by finding that the evidence and/or testimony, as shown by the record, favors Father

_____

[3] This was the date the court served its opinion on the parties.

[4] Mother was also granted custody during the second weekends of the months of October, January, and March.

and supports the finding that Father should have primary physical custody?

2. Did the lower court, more particularly, err in finding that the custody factors in 23 Pa.C.S.A. § 5328 favor Father by determining the following:

a. [Father] has the better ability to provide stability and continuity; . . .

b. [Father's] extended family, weighted in [Father's] favor, provides more support; . . .

c. [Father] will provide the same or similar access to the children as [Mother] did.

Mother's Brief at 11 (citations omitted).

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa. Super. 2014) (citation omitted).

We summarize Mother's arguments for both of her issues, which are interrelated. She lists each of the statutory factors that a court must consider in evaluating custody and identifies evidence for most of the factors

that in her view, favor awarding custody to her.[5]  We conclude Mother is not entitled to relief.

We set forth the statutory factors considered by the court in determining custody:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

_____

[5] The parties agree that some factors are not at issue, *e.g.*, 23 Pa.C.S. § 5328(a)(2), which states the court should consider whether there was past or present child abuse.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). In addition, "[i]n a custody case where neither parent is relocating, but the children stand to move a significant distance, trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interests analysis." *D.K.*, 102 A.3d at 476. In this

respect, "[t]rial courts should also consider those relevant factors of section 5337(h) that are not otherwise encompassed directly or implicitly by the section 5328(a) factors pursuant to the catchall provision of section 5328(a)(16)." *Id.* at 476-77. The non-duplicative Section 5337(h) factors are:

> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> &ast; &ast; &ast;
>
> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> &ast; &ast; &ast;
>
> (10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

After careful consideration of the record, which includes almost 700 pages of testimony, the parties' briefs, and the decisions of the Honorable Michael J. Lucas, we affirm on the basis of the trial court's decisions. *See* Trial Ct. Op., 10/6/16, at 2-5; Trial Ct. Op., 8/12/16, at 8-23 (holding that (1) Mother did not credibly establish economic stability, (2) court properly

weighed access to the parties' extended family; and (3) although Father was not the party most likely to encourage the children to speak with the other parent, court tailored its order to assure Mother will have access to the Children and to information about them).[6]  We add that the court did not find that all the custody/relocation factors were overwhelmingly in Father's favor.  As Mother acknowledges, the court found three factors favored Mother, three factors favored Father, and the remaining factors favored neither party, favored both parties equally, or did not apply.  Given the trial court's thorough review and our deferential standard of review regarding credibility and weighing of the above factors, we cannot conclude, based on this cold record, that the trial court's findings are unreasonable.  **See D.K.**, 102 A.3d at 478.  Accordingly, we affirm the order below.  The parties are instructed to include the attached trial court decisions in any filings referencing this Court's decision.

Order affirmed.

---

[6] The trial court cited an unpublished memorandum of this Court as persuasive authority. **See** Trial Ct. Op., 8/12/16, at 6 (citing **L.E.C. v. J.A.S.**, 1598 MDA 2014, 2015 WL 6951152 (Pa. Super., June 29, 2015)). Our current Internal Operating Procedures do not permit such citation and we therefore do not adopt the trial court's reliance on **L.E.C. See Reinoso v. Heritage Warminster SPE LLC**, 108 A.3d 80, 83 n.4 (Pa. Super.) (*en banc*), **appeal denied**, 117 A.3d 298 (Pa. 2015).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/27/2017

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

J███ C███,

PLAINTIFF,

v.

K███ W███,

DEFENDANT.

CP-63-CV-2013-1130
1347 WDA 2016

### Pa.R.A.P. 1925 Memorandum

The Court submits its opinion pursuant to Pennsylvania Rule of Appellate

Procedure 1925(b). The Court incorporates its original trial Opinion and Order of

August 11, 2016 by reference. The Court has set forth a comprehensive procedural

history in its August 11, 2016 Opinion, and as such will not reproduce it here.

### Standard of Review

In reviewing a custody order, the Superior Court' scope of review is of the

broadest type and its standard is abuse of discretion...Ultimately, the test is

whether the trial court's conclusions are unreasonable as shown by the evidence of

record. The Superior Court may reject the conclusions of the trial court only if they

involve an error of law, or are unreasonable in light of the sustainable findings of

the Trial Court. M.O. v. J.T.R., 85 A.3d 1058 (Pa.Super. 2014), quoting V.B. v.

J.E.B., 55 A.3d 1193, 1197 (Pa.Super. 2012)

Furthermore, the Superior Court must accept the findings of the trial court supported by competent evidence of record. In matters of credibility and weight of evidence, the Superior Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. C.M.K. v. K.E.M., 45 A.3d 417 (Pa. Super. 2012), quoting E.D. v. M.P., 33 A.3d 73, 76 (Pa. Super. 2011).

Finally, "[t]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and [the Appellate Court is] unable to find any abuse of discretion. R.M.G., Jr., v. F.M.G., 986 A.2d 124, 1237 (Pa. Super. 2009).

## The Appellant's "Errors" Complained of on Appeal are Disagreements with the Court's Credibility and Factual Determinations

In the majority of Ms. W███'s matters complained of on appeal fall soundly within the discretion of the trial court in its role as factfinder. These matters can be condensed into three discrete issues:

1. Ms. W███'s challenges to the Court's findings on the parties' ability to provide stability and continuity in the lives of the children; (Nos. 2, 3, 5, 6, 7, 8 9, 10, and 11)

2

2. Ms. W████'s challenges to the Court's findings regarding extended family; (Nos. 4, 9, and 12) AND

3. Ms. W████'s claim that Mr. C████ will deny her the same access to the children that she provided him and that the Court failed to properly address this issue. (Nos. 13, 14)

The Court will address the matters at they apply to these three issues.

## The parties' economic status and stability

The majority of Ms. W████'s matters complained of on appeal center around the Court's analysis of the economic situations as an element of their capacity to ensure stability and continuity in the children's lives. The Court addressed this matter in the sections of its opinion analyzing § 5328(a)(4) and (16). Both Mr. C████ and Ms. W████ enjoy different circumstances compared to the last time they appeared before the Court. However, the evidence on these factors favored Mr. C████. Ms. W████ did not credibly show that her current circumstances support long term stability and continuity in the lives of the children.

Furthermore, the children's need for stability and continuity in their lives is only a factor in the overall analysis of the best interests of the children. It was the analysis of all applicable factors that led the Court to fashion its order of custody.

3

## Access to Extended Family

The Court addressed Ms. W███'s matters in its August 11, 2016 Opinion and Order in the section analyzing § 5328(a)(5), (12), and (16). The Court appropriately weighed the availability of extended family and the role that these family members played in the lives of the children. Ms. W███'s disagreement with these findings does not constitute an error of law.

## Frequent and continuing contact between the child and the other party

The Court addressed the substance of Ms. W███'s matters in the sections of its Opinion analyzing § 5328(a)(1) and (8). Ms. W███ argues that Mr. C███ will not permit her the same level of contact with the parties' children that she permitted him. She further argues that the Court erred in finding that her relationship with the children could be preserved by requiring Mr. C███ to do the things she had done for him while the children were in her care.

The Court found that both parties had demonstrated an ability to encourage and permit frequent and continuing contact, but that both had also behaved in a negative manner towards and regarding each other. Although the Court found the overall factor analysis to favor Mr. C███, it found this particular factor to favor Ms. W███.

In its Order of Custody, the Court requires Mr. C███ to supply Ms. W███ with bi-weekly written updates concerning the children's school progress,

4

health, and extracurricular activities. The Order also requires the parties to semiannually exchange photographs of the children with the parent so that the children may display pictures of themselves with the other parent in their bedrooms.

No credible evidence was presented to the Court that Mr. C████ would deny Ms. W████ a place in the life of the parties' children. The Court engineered its Order to place Ms. W████ in regular physical custody of the children and to give her regular contact with them when out of custody. If Mr. C████ is to do as Ms. W████ speculates, he would not only expose himself to the penalties of contempt of court for violating this Court's Order, but also provide new and different evidence for any future analysis of the § 5238 factors should either party file for a modification.

## Conclusion

For all of the above-reasons, the Court respectfully contends that it did not abuse its discretion in crafting its Order of Custody, as it analyzed the best interests of the parties' children utilizing the factors set forth in 23 Pa.C.S.A. § 5328. Accordingly, the Court requests that its August 11, 2016 Opinion and Order of Custody be affirmed.

BY THE COURT

5

MICHAEL J. LUCAS

6

IN THE COURT OF COMMON PLEAS OF

WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION


J█████ C███████,

### PLAINTIFF

VS.                                             NO. 2013-1130

K██████ W███████,

### DEFENDANT


## OPINION AND ORDER

Before the court is a custody dispute involving two (2) children, B.C., age 5, and J.C., age 4. The parties dispute primary physical custody of their daughter and son. Such dispute has been ongoing since February of 2013 and has been the subject of several prior interim and final orders of custody.

On February 28, 2013 Mr. C█████ filed a complaint for shared physical and legal custody. On March 27, 2013 Mr. C█████ filed a counter-affidavit objecting to a proposed relocation by Ms. W█████. On April 19, 2013 Ms. W█████ filed an "Emergency Motion to Relocate." In this emergency motion, she represented that she had lost employment at the Meadows Casino and that she had encountered a

1

"housing crisis." Ms. W█████ requested that she be permitted to move with her children from Canonsburg, Washington County to Irwin, Westmoreland County.

On April 19, 2013 the Hon. Gary Gilman granted Ms. W████ emergency relief permitting her move to Irwin and issued an interim order of custody. Pursuant to the interim order, Mr. C█████ had physical custody of the children starting each Thursday evening until Sunday. Ms. W████ had physical custody of the children at all other times.

On April 26, 2013, Ms. W████ filed a formal petition seeking relocation of the children to Fort Worth, Texas. On June 6, 2013 Ms. W████ sought a change to Judge Gilman's interim order. Ms. W████ requested that the children be in her custody any night that Mr. C████ was not available to have the children reside in his home. Judge Gilman denied this requested relief. However, Judge Gilman directed that the paternal grandparents should not smoke in the presence of the children. On July 26, 2013, Ms. W████ withdrew her petition to relocate to Texas.

On August 23, 2013 upon the recommendation of a custody conference officer, Judge Gilman issued an order of custody. Pursuant to this order, the parties shared physical and legal custody of the children on a recurring two (2) week schedule. In "Week A" Mr. C████ had physical custody of the children

from Thursday until Sunday. In "Week B" Mr. C▬ had physical custody from Thursday until Monday. The children resided with Ms. W▬ at all other times.

On October 1, 2013 Ms. W▬ requested a custody trial de novo "nunc pro tunc." Judge Gilman denied the request as being untimely.

On or about April 16, 2014 Ms. W▬ served notice of her intention to relocate with the children to Baltimore, Maryland. On May 6, 2014 Mr. C▬ filed a counter affidavit opposing Ms. W▬'s intention to relocate from Irwin, Pennsylvania to Maryland. This court conducted a relocation hearing on July 10, 2014. On July 18, 2014, this court issued an opinion and order approving Ms. W▬'s relocation to Baltimore, Maryland. In the same order, this court issued an interim order of custody providing the parties with shared physical and legal custody, with the parties having a two (2) week on and two (2) week off schedule. This court scheduled a further hearing to consider all evidence relevant to a modified order of custody as required by 23 Pa.C.S.A. § 5337 (f).

On August 5, 2014 Mr. C▬ filed a written request for reconsideration. On September 11, 2014 this court denied Mr. C▬'s request for reconsideration and issued a modified order of custody. The modified order of custody was stipulated to and agreed upon by the parties. The modified order of custody

3

incorporated this court's July 18, 2014 order for shared custody on a two week on two week off schedule and portions of Judge Gilman's order of August 28, 2013.

Within eight months, on March 17, 2015 Ms. W█████ filed a motion seeking to modify the previously agreed upon custody order. On February 18, 2016 upon recommendation of the custody conference officer this court issued a new order of custody. This new order provided for the parties to share legal custody. However, primary physical custody during the school year was awarded to Mr. C█████ and periods of partial custody on the first, third and fourth weekend of each month was granted to Ms. W█████. During the summer break from school the parties returned to sharing physical custody on a two (2) week on and two (2) week off schedule. On March 3, 2016, Ms. W█████ filed a timely request for a trial de novo.

Following a pre-trial conference on April 8, 2016 this court scheduled the trial de novo for June 27 and June 28, 2016. The parties appeared and offered testimony of seven witnesses including both parties. Due to the length of testimony Mr. C█████'s testimony could not be completed. The parties returned on July 15, 2016 to complete the presentation of evidence which included testimony from Mr. C█████, and rebuttal evidence from Ms. W█████.

4

## DISCUSSION

In ordering any award of custody, the court shall determine the best interests of the child by considering all relevant factors. When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. E.D. v. M.P., 33 A.3d 73, 80 (Pa.Super.2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa.Super.2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. E.D., supra at 81. The record must be clear on appeal that the trial court considered all the factors. A.V. v. S.T., 2014 PA Super 48, 87 A.3d 818, 822–23 (Pa. Super. 2014)

In an action where a relocation and primary custody are in dispute, a court is required to consider all statutory best interests factors as set forth in 23 Pa.C.S.A. § 5328(A) and 23 Pa.C.S.A.§5337. E.D. v. M.P., 33 A.3d 73 (Pa. Super. 2011).[1] 23 Pa.C.S.A. § 5322(a) defines a relocation as a change in residence of the child which *significantly impairs* the ability of the non-relocating party to exercise custodial rights. 23 Pa.C.S.A. § 5337 is designed to give notice to a party with

---

[1] See also B.K.M. v. J.A.M., 50 A.3d168, 172–75 (Pa.Super.2012) which held that because the best interests of the child are the paramount concern of any custody case, the trial court must address the sixteen best interest factors of section 5328(a) and the ten relocation factors of section 5337(h).

5

custody rights that the other custodial party intends to change his or her geographical location and a modification of a custody arrangement will be necessary to allow the relocating party to continue to exercise custody rights. D.K. v. S.P.K., 2014 PA Super 218, 102 A.3d 467, 473 (Pa. Super. 2014). In later decisions, the Superior Court has distinguished D.K. v. S.P.K., 102 A.3d 467, 477, 478 (Pa.Super.2014), and observed that D.K. v. S.P.K held that the trial court must consider section 5337(h) factors only where a parent is relocating with a child. See L.E.C. v. J.A.S., 1598 MDA 2014, 2015 WL 6951152, (Pa. Super. June 29, 2015).[2]

In this matter, Mr. C████'s request for primary custody to move the children back to Pennsylvania arguably does not meet the statutory definition of "a relocation." No change in residence will occur if either Mr. C████ or Ms. W████ receives primary physical custody. The children have been residing with each parent at their respective addresses under a shared custody order.

However, in D.K. v. S.P.K., 2014 PA Super 218, 102 A.3d 467, 468 (Pa. Super. 2014) the Superior Court held:

We conclude, *inter alia,* that in a case such as this, which involves a custody determination where neither Mother nor Father is relocating and only the children stand to move to a significantly distant location, the relocation provisions of the Child Custody Act, 23 Pa.C.S.A. § 5337, are not *per se* triggered and the notice requirement of section 5337(c) does not apply. However, in such cases, the trial

---

[2] A memorandum decision which is not binding authority but which can be considered as persuasive.

6

court shall consider the relevant factors set forth in section 5337(h) insofar as they impact the final determination of the best interests of the children.

Accordingly, pursuant to §5328 (a)(16) the relocation factors are a relevant consideration for a trial court where such factors impact the final determination of best interests of the children. In this case, each party thoroughly presented evidence that is sufficient for consideration of all factors set forth in both § 5328 and § 5337. In reaching this determination, the court addresses all § 5328 factors and all those relevant factors set forth in § 5337(h).

The parties do not dispute their respective standing. However, Ms. W█████ does not consent to Mr. C█████'s having primary physical custody of both children in Pennsylvania. In turn, Mr. C█████ contests an award of shared physical custody or primary physical custody to Ms. W█████.

## STATUTTORY FACTOR ANALYSIS

The court addresses below the §5328 factors and those 5337 factors relevant to this dispute. Because of the overlapping nature of these sections, in section (16) the court separately considers 5337 factors not otherwise covered by factors 1-15 of § 5328.

7

**(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

Both parties have demonstrated an ability to encourage and permit frequent and continuing contact. However, both have also engaged in behavior that undermines such abilities. For instance, Ms. W█████ conceded that she has previously disparaged Mr. C██████'s wife, N█████, in front of the children. Mr. C█████ was reluctant to provide the PACE coordinator with Ms. W█████'s contact information for the June 16 parent/parent session. To Coordinator Naccarelli, Mr. C█████ acknowledged that Ms. W█████ "needs to be a part of our children's lives." (See Exhibit J-1) At trial, the manner and substance of Mr. C█████'s testimony did not indicate that he vigilantly looked for ways to encourage contact between the children and Ms. W█████. Ms. W█████, however, credibly testified to wanting to have photos of Mr. C█████ and the children so that she could place those photos in each child's bedroom. Additionally, she has offered to share important events and holidays with Mr. C█████ and his family including birthday parties and a vacation to Disney. Mr. C█████ has declined these offers.

Taken as a whole the testimony credibly established that Ms. W█████ is presently more likely to encourage and permit frequent and continuing contact with Mr. C█████ than he is with her. Evidence on this factor favored Ms. W█████.

8

**(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child. (See also 5337(h)(9))**

No credible or persuasive evidence was presented that demonstrated a party or a member of his or her respective household has committed an act of abuse. Further, the court finds no credible or persuasive evidence that a "continued risk of harm" exists with regard to either child. PACE Coordinator Naccarelli indicated that both parties are capable of providing adequate physical safeguards and supervision for their children. (See Exhibit J-1) Evidence on this factor does not favor one party over another.

**(3) The parental duties performed by each party on behalf of the child. (See also 5337 (h)(1))**

Evidence presented established that each parent performs parental duties for each child. The evidence showed that Ms. W████, being single and having limited extended family living in close proximity, performs a greater volume of parental duties for her children than does Mr. C████. (See Exhibits 11 and 27) Further, historically, on occasion, Mr. C████ has been less attentive in performing his parental duties. For instance several years ago, B.C. suffered a severe sun burn while in Mr. C████'s care. (See Exhibit 8). More recently, however, Mr. C████ has demonstrated that he possesses the ability and the commitment to attend to the

9

needs of both children. As an example, the testimony credibly showed that Mr. C▇▇▇ was very involved in and well informed about B.C.'s medical needs regarding her physical growth and maturity.

The evidence on this factor slightly favored Ms. W▇▇, however, not to a degree that is outcome determinative.

## (4) The need for stability and continuity in the child's education, family life and community life.

The age and state of development of each child requires the parent having primary physical custody to have stable life circumstances. B.C. is starting elementary school and J.C. will continue to attend pre-school. Both will be well served by residing with a parent who can provide the stability that would enable the children to establish strong ties at school and in their community. Both children will benefit from a family life that gives each child a sense of security and consistency. The economic stability that either parent maintains will impact his or her ability to provide stability and continuity for B.C. and J.C.

Since the time of the last hearing before this court in 2014, the ability of each party to better provide for stability and continuity in matters of education, family life and community life has improved. Mr. C▇▇▇ is no longer sharing an apartment with a friend and struggling to pay utility bills. Instead, he now lives with his wife in a new home in a nice community served by a well-regarded and

10

effective elementary school and school district. Mr. C▉▉▉ has taken a sales position with a secondary market auto dealer. Mr. C▉▉▉'s new position has provided a steadier stream of regular income and his wife has a well-paying position as a financial officer for a large car dealership. The evidence clearly demonstrated that Mr. C▉▉▉ has significantly improved his personal life circumstances and the quality of life that he can offer his children.

The improvements in Ms. W▉▉▉'s personal life circumstances were credibly demonstrated by the new home she has leased and her activities' expenses for the children. She has rented a very well equipped home and has spared little expense in attempting to provide her children fun and educational life experiences. (See Exhibits 1-7, and 9)

However, the evidence presented did not credibly or persuasively establish that Ms. W▉▉▉ will be able to sustain such a standard of living. Ms. W▉▉▉ is no longer working at a Baltimore area casino as she was when she relocated in 2014. Instead, she has chosen to become self-employed as a professional poker player. In this non-traditional employment, she has been "staked" by her personal coach who has lent her money to begin her playing career. Though she has reserved both a "bank roll," money for playing poker, and a "life roll," money for paying life expenses, she offered no documentary evidence showing her taxable income. Further, despite offering 27 exhibits, many of which were multi

11

document, she did not offer a scintilla of documentary evidence substantiating her claimed present income. No bank statements were presented corroborating the existence of her "bank roll" and "life roll." Her testimony indicated that she had not begun to calculate the amount of federal, state and local income tax she will be paying. No evidence of quarterly returns was offered. The court is concerned that a significant portion of Ms. W██████'s "bank and life rolls" will be consumed with one of life's two certainties, that being taxes.

Further, despite Ms. W████'s assertions to the contrary, the court was not convinced that she would continue her endeavor as a professional poker player. At one point in her testimony, she indicated that she intended to apply for another position at a casino. At another point in her testimony, she indicated that if she were not awarded primary physical custody she would move back to Western Pennsylvania and if necessary find different employment. She testified in some detail that the economic horizons for a poker player in Western Pennsylvania were much less than for a player in Baltimore, Maryland. Taken as a whole, Ms. W████'s testimony indicated that her venture in a field of non-traditional self-employment was in its nascent stages and has significant uncertainty.

Ms. W██████'s testimony did not convince the court that her current profession will provide the income, consistency and flexibility necessary to provide the stability and continuity that J.C. and B.C. presently need. Ms. W██████

12

is not too far removed from the instability in housing and employment she and her children endured in 2013. A recurrence of the need to relocate on an emergent basis due to a lack of suitable housing could have more deleterious effects upon two school aged children than previously were encountered by B.C. and J.C. during their infant and toddler years. Staking each child's stability in home, school and community life upon the indefinite and yet to be established success of Ms. W██████'s poker playing is not an attractive ante for the court.

For these reasons, the court finds that evidence on this factor clearly and convincingly favored Mr. C██████ over Ms. W██████.

**(5) The availability of extended family. (See also 5337 (h)(1))**

Both parents have extended family members and "kin" that have developed a relationship and bond with the children. Though residing in Ligonier, Pennsylvania, Ms. W██████'s mother has consistently visited with the children and provided some substitute child care. F███ M█████, a close friend, sees the children regularly and participates in many activities with Ms. W█████ and the children. The activities include riding on Mr. M█████'s pontoon boat, going to movies and attending parties. J.C. and B.C. call Mr. M█████ "F██." He works in the casino industry and previously lived with Ms. W█████ in 2007 and 2009. He and Ms. W█████ are not a "couple" but have maintained a close friendship for the better part of the last decade.

13

Mr. C████'s extended family includes his wife, N███, his mother, S███ M███, and his father, D████ C████. Each not only have established relationships with both children but each provides regular child care assistance to Mr. C████. Mrs. M███ has cared for the children throughout their lives. On Tuesdays, she picks the children up from daycare and stays with them until Mr. C████ arrives home from work. She also cares for the children on Saturdays when Mr. C████ and his wife N███ are working. Paternal Grandfather, D███ C████, serves as Mrs. M███'s "back-up." He sees the children one time per month and lives approximately one (1) hour from Mr. C████'s home. The C████'s also attend annual beach vacations around the 4th of July holiday with extended family organized by Mr. C████'s uncle, S███ C████. The C████ extended family includes several children similar in age to J.C. and B.C. (See C████ Exhibit G).

Weighing the testimony and exhibits presented by both parties, the court finds that the evidence on this factor slightly favored Mr. C████ over Ms. W████.

**(6) The child's sibling relationships. (See also 5337 (h)(1))**

The parties stipulated to this factor. J.C. and B.C. have no siblings other than each other. A custody arrangement that keeps them together is being pursued by both parties.

14

**(7) The well-reasoned preference of the child, based on the child's maturity and judgment. (See also 5337 (h)(4))**

Due to the tender age and immaturity of each child neither B.C. nor J.C. were interviewed by the court. Neither at the parties' April 8 pre-trial conference nor during the three (3) days of trial did either party request to have the children interviewed. Both parties indicated that they would make the children available if the court insisted upon interviewing the children.

The evidence presented, through other sources, shows both children to be happy and secure in the respective custody of each parent. PACE Coordinator Naccarelli observed both children interact with each party. Mr. Naccarelli reported that both children "had a good rapport' with Mr. C▬ and "viewed him as a source of love and security." Mr. Naccarelli made a similar finding with regard to Ms. W▬. The numerous photographs offered into evidence further demonstrate the close, comfortable and affectionate relationship each child enjoys with each parent. (See Exhibits for C▬ G and H, and for W▬ 11 and 24.)

Evidence on this factor did not weigh in favor of one party over the other but was favorable to each party.

15

**(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm. (See also 5337 (h)(5)).**

No credible or persuasive evidence was presented establishing any instance of domestic violence between the parties or in their respective households. The evidence did not demonstrate the need for any special safety measures in either household.

As PACE Coordinator Naccarelli observed, Mr. C█████ is reticent concerning Ms. W█████ while the children are in his presence. Ms. W█████ acknowledged that she made disparaging comments about step-mother N████ to J.C. and B.C. Both the testimony at trial and Coordinator Nacarrelli's report indicate that since the time of those comments Ms. W█████ has made sincere efforts to encourage her children to have a positive relationship with Mr. C█████.

Evidence on this factor did not favor one party over the other.

**(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

As discussed above with regard to Factor 4, the court has significant concerns regarding Ms. W█████'s ability to provide stability and consistency for each child in education, home life and community life. Ms. W█████'s testimony demonstrated that to the extent she is capable she would not spare effort or personal expense to provide for her children. However, in earnestly attempting to

16

provide for her children, she has in the past and may in the future have to obtain employment that takes her out of her home during evening hours or overnight. Ms. W█████ testified that, in part, she started a career as a professional poker player because she wanted to work when the children were at school or in daycare. Unfortunately, the success of that career choice remains uncertain. A real risk exists that Ms. W█████ will have to seek new employment. She offered no substantial evidence that such new employment would accommodate a schedule that would enable her to be with her children at night.

Mr. C█████'s circumstance is not without risk, either. His employment in the last ten years has changed yearly and in some occasions every few months. However, Mr. C█████ has consistently found work. The regular assistance his mother has provided to him and her willingness to continue doing so provides significant assurance that J.C. and B.C.'s emotional needs will be met while in their father's custody. Mr. C█████'s extended family, including J.C. and B.C.'s step-mother, paternal grandparents and step-grandparent, provides more persons available to each child to receive love and nurturing.

On this factor, the evidence weighed in favor of Mr. C█████.

**(10)** **Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

The evidence presented in this case indicates that each party attends to the daily physical, emotional, developmental, educational and special needs of J.C. and

17

B.C. More recently, Mr. C██████ has shown a commitment to properly attending to the individual medical and extracurricular needs of his children. PACE coordinator Naccarelli opined that Ms. W█████ "illustrated a strong likelihood to attend to the children's needs." (See Exhibit J-1) The evidence demonstrated that the children while in Ms. W█████'s care are more likely to be attended to by direct care from their mother while in her custody than they are to be attended to directly by Mr. C██████ while in his custody.

Evidence on this factor favored Ms. W█████ over Mr. C██████.

**(11)    The proximity of the residences of the parties.**

The parties do not dispute the location of their respective residences. B.C. is now school aged and J.C. will be attending pre-school and day care daily. Continuing the previous shared physical custody order is not in the best interests of the children due to the proximity of the parties' residences being approximately four (4) hours apart.

**(12)    Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

The evidence demonstrated that both parties are available to provide direct parental care for each child and both are very capable of making appropriate child care arrangements if personally unavailable.

18

(13)  **The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

The level of conflict in this case is high. Both parties are responsible for the current state of discord. Mr. C██████'s wife, N█████, has also contributed to the ongoing restrained but hostile interaction between the parties.

Coordinator Naccarelli reported that both parties gained "perspective" through the P.A.C.E. program. Mr. C██████ conceded that he is not forthcoming in sharing information with Ms. W█████. Ms. W█████ conceded that she "opens up too much."

Coordinator Naccarelli observed that the parties continually argue about Ms. W█████'s decision to move to Maryland and her choice of profession. Coordinator Naccarelli opined that if the parties continue to use these two points as their "main arguments" they will make little progress in co-parenting.

Having observed the testimony of the parties and Mr. C██████'s wife N█████, and based upon the findings of Coordinator Naccarelli, the Court finds that directing the parties to obtain further co-parenting counseling is in the best interests of both B.C. and J.C. Such co-parenting may, if deemed appropriate by the counselor, include N█████ Z█████.

19

**(14)    The history of drug or alcohol abuse of a party or member of a party's household.**

No credible or persuasive evidence was presented establishing that either party or any person in their respective households has a history of drug or alcohol abuse.

**(15)    The mental and physical condition of a party or member of a party's household.**

The parties stipulated that neither has a physical or mental condition that is "relative to custody." No credible or persuasive evidence was presented that either party suffers from condition that would adversely impact his or her parental capacity. Further, the evidence presented demonstrated that each party, while exercising custody, is active and engaged in a positive and meaningful manner with J.C. and B.C.

**(16)    Any other relevant factor.**

Additionally, in any custody determination where neither parent is moving, but the children stand to move to a significantly distant location, the trial court should consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2)), the feasibility of

20

preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)). "Even though these three factors are not directly or implicitly encompassed in section 5328(a), they are clearly relevant to the decision of what is in the child's best interest when contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to section 5328(a)(16), which requires a trial court to consider any other relevant factor in making a custody determination." 23 Pa.C.S.A. § 5328(a)(16). D.K. v. S.P.K., 2014 PA Super 218, 102 A.3d 467, 476–77 (Pa. Super. 2014).

Each child's physical, educational and emotional development will be best served if one parent is awarded primary physical custody. As B.C. is starting elementary school and J.C. will be attending daily pre-school or day care, the best interests of each child require that they have a primary residence and no longer move state to state between their parents every two weeks for two weeks at a time.

Mr. C████'s more stable and consistent life circumstances best serve each child when one considers their respective ages, developmental stages and needs. Both children need stability and consistency as their school age years commence. Normal activities for both children should include the developing of friendships and beginning certain activities such as dance, soccer, baseball, etc. The chance to

21

engage in those activities should not be mechanically interrupted every two (2) weeks because of the necessity to change custody.

Mr. C███ is employed in a stable position and lives in a home owned by his wife, who is also employed and who makes well in excess of $100,000.00 per year. Ms. W███ is self-employed in a non-traditional occupation that she recently started and has provided little in the way of tangible evidence regarding her chances for succeeding in that field. The evidence presented indicated that Mr. C███ and Ms. Z███ are happy and their marriage is not in any present jeopardy. Ms. Z███'s testimony revealed an emotional attachment with each child. N███ Z███ and Mr. C███'s extended family provide a broader and more available support network for J.C. and B.C. than Ms. W███ can provide to them in Maryland. For these reasons, B.C. and J.C.'s lives will be enhanced by awarding Mr. C███ primary physical custody.

The court acknowledges that, in some respects, the quality of Ms. W███'s relationship with her children may be diminished by the award of primary custody to Mr. C███. Exhibits 11 and 24 include numerous photographs that demonstrate the quality of the relationship Ms. W███ enjoys with her children. Less time with her children will result in fewer opportunities to continue all the good memories she has made with her children. In other respects, not being the primary custodial parent may provide Ms. W███ with the opportunity to gain

22

the stability in her career and home life that will assuage the concerns the court has expressed earlier in this opinion. Ms. W████'s primary commitment to her children is sincere and genuine. Due to that strong commitment, this court finds that Ms. W████'s relationship with her children can be preserved. Daily telephone contact with her children while out of her custody, Mr. C████'s placement of pictures of Ms. W████ in the rooms of both children, Mr. C████'s willingness to share important events in the children's lives with Ms. W████, Mr. C████'s regular sharing of information with Ms. W████, extended visits on school holiday weekends and breaks, and a summer schedule that provides significant daily custody with Ms. W████ could all contribute to successfully preserving Ms. W████'s relationship with B.C. and J.C.

Finally, the Court has given consideration to the motivations each party has in this dispute. The court finds that the integrity of the motives in this litigation of each party has been well established. Each loves her or his children dearly. Each believes that she or he can best care for and raise their children. The order this court issued in the summer of 2014 is no longer practical or effective in achieving what is in each child's best interests.

Under the present circumstances, the best interests of the children are served by one party having primary custody. After a full consideration of all factors set

23

forth in 23 Pa.C.S.A. § 5328(a) and §5337(h), the best interests of J.C. and B.C. are served by an award of primary custody to Mr. C████.

## ORDER

AND NOW this 11th day of August, 2016 for the reasons set forth in the opinion above, it is ORDERED, ADJUDGED AND DECREED that:

1. The parties shall have joint legal custody of the minor children, I████ C████ and J████ C████;

2. Pending commencement of the 2016-2017 school year, the parties shall continue to share physical custody of the children until 6:00 p.m. on Sunday August 14, when Mr. C████ shall have primary physical custody of both children;

3. Commencing at 6:00 p.m. on Sunday August 14, 2016 until the first Sunday after the last day of the school year the children shall reside with Mr. C████, who shall enjoy primary physical custody;

4. Commencing the first and third full weekends of September, 2016, from 6:00 p.m. on Friday to 6:00 p.m. on Sunday, Ms. W████ shall enjoy partial physical custody of the children. Such partial physical custody may be exercised on the first and third full weekends of each month, thereafter, from 6:00 p.m. on Friday to 6:00 p.m. on Sunday. In the event that school is not in session on a Friday, Ms. W████ shall have the option of expanding her custodial time so that it commences on Thursday at 6:00 p.m. provided she gives Mr. C████ seven (7) days' notice of her

24

intention to exercise additional time. Should school not be in session on a Monday following Ms. W█████'s custodial weekend, Ms. W█████ shall have the option of expanding her custodial time so that it concludes on Monday at 4:00 p.m. provided she gives Mr. C█████ seven (7) days' notice of her intention to exercise additional time. In the months of October, January and March, Ms. W█████ may elect to exercise additional periods of physical custody during the second full weekend of the month. Such custody shall be exercised within the geographical limits of Southwestern, Pennsylvania to include any county sharing a common border with Washington County. Ms. W█████ shall provide Mr. C█████ thirty (30) days' notice of her intention to exercise this additional time. Further, Ms. W█████ shall be permitted to have additional periods of partial custody as the parties may agree;

5. During the summer school vacation, Ms. W█████ shall be provided with seven (7) full weeks of custody which may be exercised any time after the first Sunday following the last day of school. However, such periods shall not be exercised during the six (6) days prior to the July 4th holiday and the seven (7) days following the July 4th holiday and the last seven (7) days before the start of the school year when the children shall be in Mr. C█████'s custody. On or before May 1st of each year Ms. W█████ shall notify Mr. C█████ of the seven (7) weeks she will be exercising custody during the summer school vacation;

6. In even numbered years, Ms. C▬ shall have the children from the beginning of their Thanksgiving break until 12 p.m. on the Friday following Thanksgiving when the children shall go into the custody of Ms. W▬ who shall have custody until the following Monday at 4 p.m. In odd numbered years, this schedule shall change with Ms. W▬ receiving the children following their dismissal from school to Friday at 12 p.m. and Mr. C▬ having custody for the remainder of the Thanksgiving break from school;

7. In even numbered years Ms. W▬ shall have custody from 6 p.m. on the last day of school before the Christmas Break until 12 p.m. on December 27th when Mr. C▬ shall have custody for the remainder of the Christmas break. In odd numbered years, Mr. C▬ shall have custody from dismissal from school for Christmas break until 12 p.m. on December 27th, when Ms. W▬ shall receive custody until 12 p.m. on the last day of the Christmas Break;

8. Ms. W▬ shall have custody of the children each Mother's Day weekend from Friday at 6 p.m. to Sunday at 6 p.m.;

9. Mr. C▬ shall have custody of the children each Father's Day Weekend from Friday at 6 p.m. to Sunday at 6 p.m.;

10. Commencing in 2017 and for each year thereafter, Ms. W▬ shall always have custody of children on Memorial and Labor Day Weekends from 6 p.m. on Friday to 6 p.m. on Monday;

26

11. Thirty (30) days prior to Easter break from school Mr. C▮▮▮ shall notify Ms. W▮▮▮ of the dates of the Easter/ Spring break for the children. If such break is no longer than a weekend and one day, Mr. C▮▮▮ shall have custody for the first (24) twenty four hours of the break and the last fifteen (15) hours of the break. Ms. W▮▮▮ shall have custody for all remaining time on the break. If the break is longer than a weekend and one day, the parties shall equally split the break. If the parties are unable to agree on how to divide the Easter Break, Ms. W▮▮▮'s election shall be controlling in odd years and Mr. C▮▮▮'s shall control in even years;

12. The holiday schedule shall supersede the regular custody schedule unless otherwise agreed upon by the parties;

13. The parents shall attend and participate in a joint birthday party for each child. In even numbered years, Ms. W▮▮▮ shall host I▮▮▮'s joint birthday party and in odd numbered years she shall host J▮▮▮'s joint birthday party. In even numbered years Mr. C▮▮▮ shall host J▮▮▮'s joint birthday party and in odd numbered years I▮▮▮'s joint birthday party. Maternal and Paternal grandparents shall be invited to all such parties. Other extended family and friends may be invited at the discretion of the host. The scheduling of the parties does not have to coincide the precise birth date of each child but shall occur within 21 days of the child's

27

birthday. The parties shall cooperate on the selection of a date that is convenient for the parties and the children;

14. The custody schedule shall be modified to permit the children to attend special family functions to include graduations, weddings, funerals and one family reunion per year per party;

15. Unless otherwise agreed to by the parties, all custody exchanges shall occur in Breezewood, Pennsylvania under the terms and conditions set forth in this court's order of September 11, 2014;

16. That neither parent shall enroll the children in any extra-curricular, sporting or other similar activity without the consent of the other parent. Both parties shall, in good faith, give serious consideration to the desires and interests of each child. Neither party shall unreasonably withhold consent for such participation. Both parties shall be permitted to attend activities of the children. The party in custody shall have the duty to exercise reasonable efforts to timely and effectively inform the party out of custody of any changes in activity schedules. In the event a party forgoes a custodial period to accommodate the activity schedule of a child, the parent who surrendered their custodial time shall be permitted to select "make up time" for a date to occur within the next thirty (30) days following the event which caused the change in schedule;

17. The parent out of custody shall be permitted to contact the children daily via phone or other electronic means at reasonable times, but no later than 8:00 p.m. The children shall be permitted to contact the parent out of custody at reasonable times;

18. The parties shall participate in further co-parenting counseling to assist them in effective communication regarding their children;

19. Mr. C▮▮▮ shall provide to Ms. W▮▮▮ bi-weekly written updates concerning each child's school progress, health, and activities outside school. Such updates shall be provided to Ms. W▮▮▮ on or before each Friday exchange of custody;

20. On or before the 1st day of March and the 1st day of September of each year the parties shall exchange pictures of the children which depict the children with the other parent. Each parent shall permit each child to select a reasonable number of pictures to display in the child's bedroom. The parties may exchange pictures on more than two occasions if they so agree;

21. While in the presence of the children neither parent shall make remarks or do anything which can in any way be construed as derogatory or uncomplimentary to the other parent. Each parent shall uphold the other parent as one whom the children shall respect and love;

22. Each parent shall consult with the other on all matters of importance relating to each child's health, activities, education, and religious training. Each parent shall,

at all times, keep each other informed of his or her place of residence and telephone number and shall promptly notify the other of any change, giving the address of the new place of residence and the new telephone number. If either parent has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of the children, they shall promptly notify the other parent of such circumstances. Each parent shall supply the name, address, and phone numbers of any persons in whose care that parent places the children for a period in excess of forty eight hours. This provision does not apply to a parent's spouse or to a grandparent;

23. Emergency decisions regarding the children shall be made by the parent then having custody. However, in the event of any emergency or serious illness of either child at any time, the parent in custody shall promptly communicate with the other parent by telephone or any other means practical, informing the other parent of the nature of the illness or emergency, so that the other parent can become involved in the decision making process as soon as practical. The term "serious illness" as used shall mean any injury or illness that requires the child to be taken to a hospital for treatment;

24. Neither parent with custody rights shall relocate without notice to the other parent and consent or court approval. See 23 Pa.C.S.A. § 5337 (c) and (d). If there is no consent the parties shall follow the procedure outlined in the Child

30

Custody Statute. BOTH PARTIES ARE UNDER A CONTINUING LEGAL OBLIGATION TO ADHERE TO THE REQUIREMENTS OF 23 PACSA § 5337 REGARDING THEIR INTENTION TO RELOCATE WITH THEIR MINOR CHILD.

25. This Order shall constitute a Final Order, and as such supersedes and replaces all previous custody orders.

BY THE COURT

_____ J.
MICHAEL J. LUCAS

31